| | | |
|---|---|---|
| STATE OF INDIANA | ) )SS: | IN THE MARION SUPERIOR COURT |
| COUNTY OF MARION | ) | CAUSE NO. 49D07-1004-MF-015176 |

PNC BANK, NATIONAL ASSOCIATION,  )
successor to NATIONAL CITY BANK successor  )
by merger with NATIONAL CITY BANK OF  )
MICHIGAN/ILLINOIS,  )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,  )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　vs.  )
　　　　　　　　　　　　　　　　　　　　　　)
LUXURY TOWNHOMES, LLC,  )
LP XXIV, LLC,  )
STATE OF INDIANA and  )
BLAKLEY CORPORATION,  )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.  )

**FILED**

JUL 21 2010

*Elizabeth F. White*
CLERK OF THE MARION CIRCUIT C—

## ORDER APPOINTING RECEIVER

This matter came before the Court on the Motion for the Immediate Appointment of a Receiver filed by Plaintiff, PNC Bank, National Association, successor to National City Bank, successor by merger with National City Bank of Michigan/Illinois ("Bank"). Terms not otherwise defined shall have the same meaning as set forth in the Bank's Complaint for Damages, for Replevin, to Foreclose Mortgages and Request for the Immediate Appointment of a Receiver ("Complaint"). The Court having reviewed the pleadings and affidavits, and otherwise being duly advised, now finds that:

　　A.　　This Court has both subject matter and personal jurisdiction in this matter.

　　B.　　The Bank has established sufficient cause, pursuant to Indiana Code § 32-30-5-1(4)(A), (B), (C), (F), for the appointment of a receiver over the Luxury Townhomes Collateral and LP Collateral with the powers more specifically set forth in this Order.

C.   Kenneth P. Polsinelli of McKinley, Inc. is qualified to act as the Receiver herein.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that:

1.   Kenneth P. Polsinelli of McKinley, Inc. is hereby appointed the Receiver over Luxury Townhomes and LP and the Luxury Townhomes Collateral and LP Collateral (collectively, the "Collateral") pursuant to § 32-30-5-1(4)(A), (B), (C), (F) to take possession of, manage and operate the Collateral, to collect the rents, issues, income, profits, receivables and proceeds thereof, to apply the same to the payment of all amounts required in the Receiver's judgment for the preservation thereof, to pay any excess receipts (i.e., gross income after payment of operating expenses and establishment of a reasonable operating reserve) to the Bank, and to do any other acts it deems proper to protect and operate the Collateral. The Receiver is specifically authorized to operate and maintain the Collateral. The Receiver is authorized at his discretion to employ and enter into a management agreement with a management company ("Managing Agent") for the day-to-day management and operation of the Collateral until such time as the Collateral are sold by order of this Court or until further action or order of this Court. The Receiver, or his Managing Agent, is authorized to use existing employees, to hire additional employees or to use their own employees, as is necessary or appropriate for the maintenance and operation of the Collateral.

2.   The Receiver, or such Managing Agent as he may designate, may demand and collect from the tenants in possession of the Collateral or from any person or entity liable therefor all rentals, utility charges, common area charges, maintenance and insurance charges, real estate and collateral tax and assessment charges and any and all other charges and income derived from the Collateral.

3. Until further notice of the Court, tenants in possession of the Collateral, or any person or entity liable therefor, are hereby directed to pay the Receiver, or such Managing Agent as he may designate, all rentals, utility charges, common area charges, maintenance and insurance charges, real estate and collateral tax and assessment charges or other amounts due or hereafter to become due with respect to their tenancy or for services rendered to them or on their behalf and are hereby enjoined from doing otherwise.

4. The Receiver shall maintain the Collateral, prevent waste, and make all necessary repairs of an ordinary nature out of the rent and income collected by the Receiver to maintain the Collateral in good order and continue operation of the commercial buildings located on the Real Property.

5. The Receiver may institute and prosecute suits or summary proceedings (a) for the collection of rents, income, or other amounts; or (b) otherwise related to the Collateral, the apartment buildings, or the duties imposed upon the Receiver by this Order. The Receiver may defend against any legal action brought against him in his capacity as a Receiver against or pertaining to the Collateral. All costs and expense arising from or in connection with such legal actions or suits shall be operating expenses of the receivership estate.

6. The Receiver may negotiate with any and all interested persons concerning use of the Collateral or, if permitted by applicable law, may enter into leases or tenancy agreements with a term of one (1) year or less in the ordinary course of business subject to the Bank's consent. All leases or tenancy agreements with a term of over one (1) year or outside the ordinary course of business shall be made with the Bank's consent and Court approval.

7. The Receiver shall obtain insurance or maintain current existing policy for the Collateral or in connection with the duties hereunder in such amounts, with such companies, to

insure against such risks, as the Receiver deems necessary or desirable; provided, however, any party in interest, including the Bank may petition the Court to review and order the Receiver to modify such insurance coverage. Futhermore, the Receiver shall be and hereby is authorized (a) to continue, extend and enforce the existing insurance policies; (b) to take immediate possession of the existing policies and take full control of the existing policies; (c) prosecute claims, make proofs of loss and authorize the filing of claims under the existing insurance policies; (d) to execute cancel or modify the existing insurance policies as may be from time to time appropriate; (e) to collect all reimbursement, refunds and proceeds related to the existing insurance policies accruing, paid or becoming due from the date of the mortgage until the Receivership is terminated by this Court; and (f) to take all such other actions as may be necessary or appropriate in connection with the existing insurance policies to preserve, secure and safeguard the Collateral and rents.

8. The Receiver shall maintain a bank account in his own name, as Receiver, or in the name of any designee he may hereafter appoint as Managing Agent, in which he shall deposit all rentals and other income received by him, or from which he shall disburse such funds as may be required to defray the expenses of the Receivership.

9. The Receiver is authorized without further leave of the Court to employ any assistants, servants, agents, counsel or other persons deemed necessary or desirable to assist the Receiver in diligently executing the duties imposed upon the Receiver in this Order including but not limited to such agents or brokers deemed necessary to lease the Real Property and/or pursue a sale of the Collateral.

10. Luxury Townhomes and LP, as the owners and operators of the Collateral, their owners, officers, directors, agents, representatives and employees shall cooperate with the Receiver

and turn over or provide to the Receiver within seven (7) days of the date of this Order any and all records and information it or they may have concerning the current use of the Collateral, including without limitation all records and other information related to (a) any lease or tenancy agreements to which the Collateral is or may be subject, (b) any amounts paid by tenants; (c) all liens or other encumbrances on the Collateral, (d) property taxes, (e) insurance of all types, including liability, related to the Collateral, (f) loss runs for the past 5 years relating to the Collateral, (g) all accounts payable and receivable pertaining to the Collateral, (h) all accounts at financial institutions for income derived from lessees or insurers of, or otherwise related to, the Collateral, (i) utility meter information and (j) all other aspects of the Collateral that are or may be necessary or pertinent to the Receiver's operation or management of the Collateral or the performance of any power or duty granted by this Order.

11. Luxury Townhomes and LP, as the owners and operators of the Collateral, their owners, officers, directors, agents, representatives and employees shall cooperate with the Receiver and turn over to the Receiver within seven (7) days of the date of this Order all sums in existence on the date hereof, or which later come under their possession or control, that are related to or pertaining to, or derived from the Collateral, including, but not limited to (a) all cash on hand, (b) all cash equivalents and negotiable instruments (such as checks, notes, drafts or other related documents or instrument), and (c) all sums held in accounts at any financial institutions (including, but not limited to, (i) tenant/lessee security deposits, (ii) deposits held in escrow for any purpose, such as the payment of real or collateral taxes and insurance premiums, (iii) proceeds of insurance that are maintained on or would pertain to the Collateral, (iv) rent and prepaid rent, (v) funds designated or intended for capital improvements, repairs, renovations to, or in connection with, the Collateral; and (vi) all other sums of any kind relating to the use, enjoyment, possession,

5

improvement or occupancy of all or any portion of the Collateral. In addition, Luxury Townhomes and LP, as the owners and operators of the Collateral, their owners, officers, directors, agents, representatives and employees shall cooperate with the Receiver and provide an accounting of all rents, issues and profits and other monies collected in the one (1) year period prior to the appointment of the Receiver.

12. The Receiver may pay out of the rents and income collected any and all outstanding obligations to suppliers or other creditors who have previously supplied materials, business supplies and/or labor (together "Suppliers") to or for the benefit of the Collateral, but only to the extent the Receiver shall determine that it is prudent to do so in order to maintain the business relationships with such Suppliers for the benefit of the preservation of the Collateral, and only upon application of this Court with notice to all parties. Notwithstanding the foregoing, the Receiver may pay Suppliers without Court approval if (a) an emergency exists and (b) the Receiver reasonably believes it is necessary to make such payment in order to maintain or preserve the Real Property.

13. The Receiver is authorized to pay any excess receipts (i.e., gross income after payment of operating expenses and establishment of a reasonable operating reserve) to the Bank.

14. In addition to any other reports required by the Court, the Receiver is directed to prepare and file with the Court monthly operational statements within thirty (30) days after the end of each calendar month and annual operational statements shall be furnished to the Court within sixty (60) days after the end of each calendar year. The Receiver is further directed to serve copies thereof on the attorneys of record for all named defendants.

15. The Receiver is authorized to borrow money from the Bank necessary to maintain and preserve the Collateral and such borrowing shall be secured by a first and prior lien and security interest against the Collateral with priority over all existing liens, encumbrances, mortgages, and

security interests. All amounts advanced to or for the benefit of the Receiver by the Bank necessary in the performance of his duties, whether advanced by the Bank prior to the date of this Order or directly borrowed by the Receiver, shall constitute an obligation of this receivership estate to the Bank and shall constitute advances under the Luxury Townhomes Loan Documents and LP Loan Documents and shall be secured by such loan documents, and shall be a first priority lien and security interest in the Collateral to secure payment of such obligations which lien and security interests are superior to all claims against the Collateral including presently existing valid, enforceable and perfected liens, mortgages or security interests.

16.   It is further ordered that the Receiver and Managing Agent shall be compensated for their managing efforts as an ordinary and necessary current operating expense as follows:

> Not to exceed five percent (5%) of the gross revenues collected on the Real Property including expense recoveries or a minimum of $18,000.00 per month collectively for the Collateral, unless otherwise ordered by the Court.

Any sale or other disposition commission shall be paid upon approval by the Bank and the Court.

17.   The Receiver is authorized to sell the Collateral free and clear of liens, interests and encumbrances; provided, however, that any sale of the Collateral shall be subject to the consent of the Bank and Court approval after notice and hearing to all interested parties.

18.   The Receiver shall assume his duties upon satisfying the requirements of Indiana Code § 32-30-5-1, which provides that a Receiver must (a) be sworn to perform his duties faithfully and with one or more sureties, approved by the court, or a judge thereof in vacation and (b) execute a written undertaking payable to the parties, as their interest may appear, to the effect that the Receiver will faithfully discharge the duties of Receiver in the action and obey the orders of the court or judge thereof.

19. Luxury Townhomes and LP and their affiliates, third parties in possession of the Collateral, and any bank, title company, title insurer, financial institution, agent, contractor, member, employee, or manager employed by Luxury Townhomes and/or LP shall, immediately upon receipt of a signed copy of this Order, deliver to Receiver forthwith all income, deposits, escrowed amounts, and other charges or revenues from the Collateral now in their possession or hereafter collected. Upon execution of this Order, Receiver shall take possession, custody, and control over all accounts of Luxury Townhomes and/or LP relating to the Collateral. If necessary, accounts may be transferred into the name of Receiver.

20. Luxury Townhomes and LP and their affiliates, third parties in possession of the Collateral, and any bank, financial institution, agent, contractor, member, employee, or manager of or for the Collateral shall, immediately upon receipt of a signed copy of this Order, turn over to Receiver all files, documents, records, and instruments used in connection with the Collateral, including, without limitation, leases, rent rolls, books and records, budgets, unpaid bills, notices, insurance policies, contracts, agreements and warranties, surveys, plans and specifications, plats, maintenance records, and membership rosters.

21. All individuals, entities, utilities, or third parties who receive actual notice of this Order by personal service or otherwise, are hereby enjoined and restrained from discontinuing service to Receiver or the Collateral based upon the non-payment of any taxes, assessments, goods, services, or utilities prior to the date hereof and from attempting to collect any taxes, assessments, invoices, or utility charges from Receiver pre-dating the date hereof, and from doing or taking, or causing to be done or taken, any action which interferes with the management, operation, and preservation of the Collateral by Receiver and his agents and employees, and shall provide access to the documents described in this Order and shall cooperate with and grant any reasonable request

made in connection with the management, operation, preservation, and advancement of the Collateral by Receiver, including the transfer of accounts from the names of Defendants to the name of Receiver. Each utility company or entity providing service to the Collateral shall forthwith transfer any deposits which it holds to the exclusive control of Receiver and shall be prohibited from demanding that Receiver deposit additional funds in advance or satisfy obligations incurred prior to the date of this Order to maintain or secure such service.

22. Defendants and their property managers, employees, agents, affiliates, and insurers are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Collateral that are in effect as of the date of this Order without the consent of the Receiver.

The written undertaking shall be and hereby is set at $150,000.00.

**SO ORDERED** this 21ST day of July, 2010.

Michael D. Keele
Judge, Marion County Superior Court

Distribution:

Thomas C. Scherer
Whitney L. Mosby
Bingham McHale, LLP
10 West Market Street, Suite 2700
Indianapolis, Indiana 46204

Peter S. French
Gary P. Price
Sara R. Bradbury
Barry S. Wormser
Matthew S. Tarkington
Lewis & Kappes, P.C.
One American Square, Suite 2500
Indianapolis, Indiana 46282

1482753v4